UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,

                Plaintiff,                REPORT AND
                                                      RECOMMENDATION
  -against-                            20 CV 4271 (MKB)(RML)

ANN M. NARINE, individually and d/b/a/ Heat
Caribbean Kitchen & Lounge; and SPICE
CATERING, INC., an unknown business entity
d/b/a Heat Caribbean Kitchen & Lounge,

                Defendants.
------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated March 1, 2021, the Honorable Margo K. Brodie, Chief United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to defendant Spice Catering Inc. d/b/a Heat Caribbean Kitchen & Lounge ("Heat Caribbean Kitchen & Lounge" or the "Establishment") and denied with respect to defendant Ann M. Narine ("Narine"). I further recommend that plaintiff be awarded $10,000 in damages, plus post-judgment interest at the federal statutory rate. Additionally, I recommend that plaintiff be permitted to move for attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff G&G Closed Circuit Events, LLC ("plaintiff") brought this action on September 11, 2020, alleging violations of the Federal Communications Act of 1934 (the "FCA"), codified as amended, 47 U.S.C. §§ 553 and 605, and seeking statutory damages as well as attorney's fees and costs. (See Complaint, dated Sept. 11, 2020 ("Compl."), Dkt. No. 1.) On January 13, 2021, the Clerk of the Court noted defendants' default pursuant to Federal Rule of

Civil Procedure 55(a). (Clerk's Entry of Default, dated Jan. 13, 2021, Dkt. 9.) On March 1, 2021, plaintiff moved for default judgement against both defendants. (Motion for Default Judgment, dated Mar. 1, 2021, Dkt. No. 10.) Judge Brodie referred plaintiff's motion to me. (Order Referring Motion, dated Mar. 1, 2021.) To date, the court has received no communication from defendants.

Plaintiff is a California corporation that "was granted the exclusive nationwide commercial distribution (closed-circuit) rights" to the September 16, 2017 telecast of the "Saul Alvarez v Gennady Golovkin, IBF World Middleweight Championship Fight Program" (the "Program") by entering into a licensing agreement with Golden Boy Promotions, LLC. (Compl. ¶ 19.) This agreement allowed plaintiff to enter into nationwide sublicensing agreements with various commercial establishments, such as "theaters, arenas, bars, clubs, lounges, restaurants and the like" by which it granted those establishments the rights to exhibit the Program, including both the main event and any "undercard or preliminary bouts." (Id.) Plaintiff granted commercial establishments authorization to broadcast the Program for a fee. (Id. ¶ 22.) Establishments that entered into these agreements with plaintiff were provided necessary decoding equipment to receive the encrypted signal. (Affidavit of Nicolas J. Gagliardi, sworn to Feb. 23, 2021 ("Gagliardi Aff."), Dkt. No. 10-2, ¶¶ 9, 11.) For establishments with a maximum capacity of up to one hundred patrons, such as defendant Heat Caribbean Kitchen & Lounge, the sublicensing fee was $2,500. (See id. ¶ 8, Ex. 2.)

Heat Caribbean Kitchen & Lounge is a commercial establishment in Richmond Hill, New York. (Compl. ¶¶ 7, 8, 9, 13.) Narine is the sole individual identified on the On Premises Liquor License for Spice Catering, Inc., where she is listed as "Owner" and "Principal." (Id. ¶¶ 9, 15.) Neither Heat Caribbean Kitchen & Lounge, nor Narine individually,

was contractually authorized by plaintiff to broadcast the Program.  (Gagliardi Aff. ¶ 3.)  However, an auditor hired by plaintiff entered the Establishment on the date in question and observed six television sets showing the Program with approximately twelve patrons present (Affidavit of Alex Bartoli, sworn to Sept. 20, 2017 ("Bartoli Aff.")[1] attached as Ex. 5 to the Declaration of Joseph P. Loughlin, dated Mar. 1, 2021 ("Loughlin Decl."), Dkt. No. 10-2.)  The auditor reported that he did not have to pay a cover charge.  (See Bartoli Aff.)

Plaintiff contends that its programming "cannot be mistakenly, innocently or accidentally intercepted."  (Gagliardi Aff. ¶ 9.)  Thus, plaintiff asserts, the only means by which the Program could have been shown at the Establishment was if defendants unlawfully intercepted it by one of numerous methods.  (See id. ¶ 10.)  Pursuant to § 605 of the FCA, plaintiff seeks $7,500 in statutory damages and $22,500 in enhanced damages.  (Plaintiff's Memorandum of Law in Support of Application for Default Judgment, dated Mar. 1, 2021 ("Pl.'s Mem."), Dkt. No. 10-1.)

## DISCUSSION

**A. Service of Process**

1. Adequacy of Service

Before entering a default judgment, the court must consider the adequacy of the plaintiff's service of process on the defendant.  Freeman v. Tuan Anh Nguyen, No. 13 CV 832, 2014 WL 4628766, at *2 (E.D.N.Y. May 20, 2014), report and recommendation adopted, 2014 WL 4628794 (E.D.N.Y. Sept. 15, 2014).  Where service of process is inadequate, the court cannot assert personal jurisdiction over the defendant.[2]  Feng Lin v. Quality Woods, Inc., No. 17

---

[1] The affidavit of Alex Bartoli does not contain paragraph numbers.
[2] However, the plaintiff's failure to submit proof of proper service is not a jurisdictional defect. Manhattan Telecomms. Corp. v. H & A Locksmith, Inc., 991 N.E.2d 198, 199 (N.Y. 2013).

3

CV 3043, 2019 WL 1450746, at *2 (E.D.N.Y. Jan. 28, 2019); Bergman v. Kids By the Bunch Too, Ltd., No. 14 CV 5005, 2018 WL 1402249, at *3 (E.D.N.Y. Feb. 16, 2018), report and recommendation adopted, 2018 WL 1401324 (E.D.N.Y. Mar. 20, 2018).  Plaintiff has filed affidavits of service with respect to both Narine and Spice Catering, Inc.  (Affidavit of Service of Roberto Urena, sworn to Dec. 11, 2020 ("Urena Aff."); Affidavit of Service of James Boland, sworn to Dec. 1, 2020 ("Boland Aff."), both annexed as Ex. 4 to Loughlin Decl., Dkt. No. 10-3.)

In New York, a process server may properly serve a corporation by serving the Secretary of State as an agent for that entity.  N.Y. C.P.L.R § 311; N.Y. Bus. Corp. Law § 306.  The Boland Affidavit specifies that plaintiff's process server delivered duplicate copies of the summons and complaint, along with the statutory fee, to the Office of the Department of State in Albany.  (Boland Aff.)  Thus, plaintiff effected proper service on Spice Catering, Inc.

Under the Federal Rules of Civil Procedure, a process server may properly serve an individual defendant by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(B).  The Urena Affidavit indicates that plaintiff's process server delivered the summons and complaint to someone named Ryan Doe, a person of suitable age and discretion at Narine's purported dwelling, 130-12 150th Street, #5, Jamaica, N.Y. 11436.  (Urena Aff.)  The Urena Affidavit states that Ryan Doe is a "Co-Tenant" of Narine but does not state whether Narine was confirmed to still reside at this address.  Id.

The Federal Rules provide that plaintiff may rely on the laws governing service of process "in the state where the district court is located or where service is made."  FED. R. CIV. P. 4(e)(1). New York law allows the plaintiff to effect service of process on the defendant by (1) delivering the summons and complaint to a person of suitable age and discretion at the

4

defendant's dwelling or usual abode and (2) mailing those documents to the defendant's last known address. N. Y. C.P.L.R. § 308(2). Here, the process server, Roberto Urena, swore that in addition to serving the summons and complaint on a person of suitable age and discretion at defendant's purported dwelling, he mailed a copy of those documents to the same address. (Urena Aff.)

    2. Proof of Service

In addition to effecting proper service, a plaintiff seeking a default judgment must offer proof of proper service. FED. R. CIV. P. 4(l)(1); N.Y. C.P.L.R. § 3215(f); 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1130 (4th ed. 2021) ("Wright & Miller"). While the Federal Rules do not explain what constitutes sufficient proof, "it is evident that the server should disclose enough facts to demonstrate the validity of service." Wright & Miller § 1130; see FED. R. CIV. P. 4(l)(1). Generally, a process server's affidavit is *prima facie* evidence of proper service. Onewest Bank N.A. v. Elliott, No. 15 CV 4395, 2016 WL 3766062, at *2 (E.D.N.Y. May 23, 2016), report and recommendation adopted, 2016 WL 3746564 (E.D.N.Y. July 8, 2016); see also Wright & Miller § 1130. To qualify as satisfactory proof of proper service, an affidavit should disclose certain essential facts. See Columbia Pictures Indus., Inc. v. Cap King, No. 08 CV 4461, 2010 WL 1221457, at *2 (E.D.N.Y. Mar. 29, 2010) (holding that a default judgment was inappropriate where the marshal's return did not specify which documents the marshals served on the defendants). Essential facts include: the location where the defendant was served, the documents that the defendant was served, and whether a person of

suitable age and discretion was served. Wright & Miller § 1130 nn.6-7 (citing Cap King, 2010 WL 1221457, at *2; Scheerger v. Wiencek, 34 F. Supp. 805 (W.D.N.Y. 1940)).[3]

While the Urena and Boland Affidavits include such facts, the Urena Affidavit does not sufficiently establish that the address used for service was Narine's actual dwelling. (See Urena Aff.; Boland Aff.) Plaintiff has not offered independent proof that the address of service was Narine's dwelling at the time of service. Moreover, the Urena Affidavit does not indicate whether the process server had personal knowledge of that fact, nor does it indicate whether Ryan Doe confirmed he was defendant's co-tenant, rather than a new resident of the abode.[4] (See Urena Aff.) "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Cap King, 2010 WL 1221457, at *2 (citing FED. R. EVID. 602). Because proof of service on Narine is insufficient, I recommend that plaintiff's motion for a default judgment be denied as to Narine, with leave to amend.[5]

---

[3] Where, as here, the plaintiff effects service pursuant to Federal Rule of Civil Procedure 4(e)(1) and New York law, an affidavit proving proper service must also include a description of the person served. N.Y. C.P.L.R. § 306; see Schweitzer ex rel. Schweitzer v. Crofton, No. 08 CV135, 2010 WL 3516161, at *11 (E.D.N.Y. Sept. 1, 2010) ("[I]f a plaintiff chooses to serve a defendant under New York law, as plaintiffs did here, that plaintiff must 'follow[ ]' New York law in its entirety."), aff'd sub nom., Schweitzer v. Crofton, 560 F. App'x 6 (2d Cir. 2014).

[4] While it is possible that Ryan Doe told the process server that the address was Narine's dwelling and he was a co-tenant, the affidavit does not make that clear. Courts in the Second Circuit have found similarly ambiguous affidavits wanting. See Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *8 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014); DeMott v. Bacilious, No. 11 CV 6966, 2012 WL 601074, at *6-7 (S.D.N.Y. Feb. 24, 2012).

[5] "Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended." FED. R. CIV. P. 4(l)(3).

### B. Default Judgment

A defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Once a default is entered, the court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law." Id. If liability has been established, motions for default judgment are "left to the sound discretion of [the] district court . . . ." Shah v. N.Y. Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)). Plaintiff may establish damages in an evidentiary hearing, but the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

1. Legal Standard

Plaintiff asserts claims pursuant to sections 605 and 553 of the FCA. However, as plaintiff correctly notes, "the law in this Circuit is clear that a [p]laintiff may recover only under one of the statutes." Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases). Because plaintiff is entitled to default judgment under section 605, which "allows for a greater recovery than does [section] 553," plaintiff's claims under section 553 will not be addressed. Id. (citing J & J Sports Prods., Inc. v. Alvarez, No. 07 CV 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)).

Section 605(a) of the FCA provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). The Second Circuit has applied section 605 to theft of cable communications. Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

    2. Liability

        i. Heat Caribbean Kitchen & Lounge

Plaintiff's factual allegations establish Heat Caribbean Kitchen & Lounge's liability under section 605(a) of the FCA. Plaintiff held exclusive closed-circuit distribution rights to the Program. (Compl. ¶¶ 20, 21.) Heat Caribbean Kitchen & Lounge showed the Program on September 16, 2017, even though it did not enter into a sublicensing agreement with plaintiff authorizing it to do so. (Gagliardi Aff. ¶ 3.) "Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (collecting cases). Accordingly, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to Heat Caribbean Kitchen & Lounge.

**C. Damages**

    1. Statutory Damages

Section 605(e)(C)(i)(II) of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(C)(i)(II). The amount in damages to be awarded, pursuant to § 605, lies in the discretion of the court. See, e.g., J & J Sports P Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL

3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (citing Time Warner Cable of N.Y.C. v. Taco Rapido Rest., 988 F.Supp. 107, 111 (E.D.N.Y. 1997)).  Courts in the Second Circuit typically use either the "flat-fee" method or the "per-person" method to determine statutory damages under Section 605(e)(C)(i)(II).  See, e.g. J & J Sports Prods., Inc. v. Monte Limar Sports Bar, No. 15 CV 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017).  The "flat-fee" method considers the amount that the defendant would have paid for authorization to broadcast the Program.  See id.  Under the per-person method, damages are equal to the amount the patrons would have collectively paid to view the Program in their homes.  See id.  "[T]he higher of the two amounts is generally awarded." Id.

Plaintiff requests statutory damages of $7,500, or three times the amount that Heat Caribbean Kitchen & Lounge would have paid for authorization to broadcast the Program lawfully.  (See Pl.'s Mem. at 5-6.)  Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case and that the court should instead award a higher amount, which it claims will result in more adequate compensation and more effective deterrence of future violations.  Id. at 7-9 (citing J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 5:13 CV 382, 2015 WL 9462975, at *5, n.8 (E.D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 4:08 CV 1797, 2011 WL 4089534 (D.S.C. July 29, 2011)).  Plaintiffs also assert that because this is a default case, they cannot calculate defendant's profits, but there is a reasonable presumption that defendants experienced financial gain.  (Pl.'s Mem. at 7-8.).

However, I respectfully recommend that the court apply the methodology typically used to calculate statutory damages in the Second Circuit.  In this case, the investigator did not pay a cover charge to enter Heat Caribbean Kitchen & Lounge and counted twelve patrons in each of his three headcounts.  (Bartoli Aff.)  Plaintiff has not provided an approximate

9

cost for a residential customer to view the Program at home. When a per-person valuation is not provided, courts in this district assume a $54.95 residential fee when one is not otherwise stated. See McAdam, 2015 WL 8483362, at *4 (collecting cases). Multiplying this number by the approximately twelve patrons present in Heat Caribbean Kitchen & Lounge on the night of the Program results in an award of $659.40. The broadcasting fee that defendants would have paid to legally broadcast the Program was $2,500. (Gagliardi Aff. ¶ 8.) Taking the greater of these two amounts, I respectfully recommend that plaintiff be awarded $2,500 in statutory damages.

    2. Enhanced Damages

The court, in its discretion, may award up to $100,000 in enhanced damages where a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests enhanced damages in the amount of $22,500 (Pl.'s Mem. at 5.)

Willfulness is described as a "disregard for the governing statute and an indifference for its requirements." Garden City Boxing Club, Inc., v. Extasis Corp., No. 07 CV 3853, 2008 WL 3049905 at *7 (E.D.N.Y. Aug. 1, 2008) (quoting J & J Sports Prods. v. Echeverria, No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007)). In this case, the fact that Heat Caribbean Kitchen & Lounge broadcasted the Program without authorization establishes the willfulness of its conduct. J & J Sports Prods., Inc. v. Tacqueria Juarez Rest Inc., No. 17 CV 4158, 2018 WL 2056181, at * 6 (E.D.N.Y. Mar. 16, 2018) ("[Defendant] could not have involuntarily intercepted and exhibited the Event given that the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed"), report and recommendation adopted, 2018 WL 2048370 (E.D.N.Y. May 2, 2018);

Time Warner Cable of N.Y.C. v. Googie's Luncheonette, Inc., 77 F. Sup. 2d, 485, 487 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously").

Courts use several factors in determining whether a willful violation justifies the imposition of enhanced damages, including evidence of (1) repeated violations; (2) significant actual damages suffered by the plaintiff; (3) substantial unlawful monetary gains by defendant; (4) defendant's advertising of the event; and (5) defendant's collection of a cover charge or premiums for food and drinks. J & J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (quoting J & J Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010)), report and recommendation adopted, 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010). Additionally, a plaintiff's claim of damage to its reputation and loss of goodwill can be considered to support an award of enhanced damages. J&J Sports Prods., Inc. v. Potions Bar & Lounge, Inc., No. 08 CV 1825, 2009 WL 763624, at *8 (E.D.N.Y. Mar. 23, 2009). In this case, there is no evidence of previous violations by defendants. With regard to actual damages, the loss sustained by the plaintiff is the $2,500 fee it would have received had defendants obtained the legal rights to broadcast the Program. (Gagliardi Aff. ¶ 8.) Plaintiff also alleges in its affidavit that piracy has resulted in the "company's loss of several millions of dollars of sales revenue." Id. Although it is unclear the extent of the revenue defendants gained from broadcasting the Program, it is reasonable to assume that food and drinks were sold to patrons watching the Program, and it is likely that defendants experienced "increased commercial gain as a result of the exhibition." Garden City Boxing Club, Inc. v. Extasis Corp. et al., No. 07 CV 3853, 2008 WL 3049905, at *7 (E.D.N.Y. Aug. 1, 2008). With respect to the fourth factor, the affidavit of the private investigator indicates that defendants advertised the Program by posting about it on Facebook at

11

least twice in advance of the broadcast. (Bartoli Aff.) Defendants advertised for the event on Facebook, stating in their post, "Catch the big fight tonight inside Heat Caribbean Kitchen and lounge! Canelo vs. Golovkin on the big screens & in audio! Get here early for your seats! NO COVER CHARGE! Happy Hour 6-9 pm." (Bartoli Aff.) Lastly, plaintiff acknowledges that defendants did not collect a cover charge.

Courts typically award enhanced damages in multiples of two or three times the amount of statutory damages. See Traffic Sports USA v. Modelos Restaurante, Inc., No. 11 CV 1454, 2012 WL 3637585, at *6 (E.D.N.Y. Aug. 1, 2012). See also Hot Shots, Inc., 2010 WL 3522809, at *3 (enhanced damages equal to three times the statutory damages) and J&J Sports Prods, Inc. v. Tellez, No. 11 CV 2823, 2011 WL 6371521 at *6 (E.D.N.Y. Dec. 20, 2011) (enhanced damages awarded in the amount of two times the statutory damages). In this case, defendants willfully and affirmatively violated the statute by intercepting the Program, as well as advertised their willful violation. In light of these facts, I find that enhanced damages of three times the amount of statutory damages is appropriate. See Modelos Restaurante Inc., 2012 WL 3637585 at *6 (awarding three times statutory damages where defendants advertised willful violation). Accordingly, I respectfully recommend that plaintiff be awarded enhanced damages in the amount of $7,500.

   3. Attorney's Fees and Costs

Section 605(e)(3)(B)(iii) of the FCA requires courts to "direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff requests thirty days from the date of entry of judgment to submit a motion for costs and attorney's fees. Because plaintiff is entitled to recover full costs and reasonable fees under the statute, I recommend that plaintiff be permitted to make its request in a

separate motion, with supporting documentation. See Joe Hand Promotions, Inc. v. Beer Closet, Inc., No. 17 CV 3735, 2018 WL 4138938, at *6 (E.D.N.Y. July 27, 2018) (permitting plaintiff to submit separate motion for attorney's fees), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

    4. Interest

Plaintiff also seeks pre- and post-judgment interest. The Second Circuit "has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization when the awards were fair, equitable, and necessary to compensate the wronged party fully." Garden City Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2016) (internal quotation marks and citations omitted). However, courts in this district have generally declined to award pre-judgment interest for FCA violations. See, e.g., LX Food Grocery, 2016 WL 6905946, at *5 (citing J & J Sports Prods., Inc. v. La Ruleta, No. 11 CV 4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012)). I respectfully recommend adhering to this precedent and denying plaintiff's request for pre-judgment interest.

Plaintiff is, however, entitled to post-judgment interest on damages from the date of entry of judgment until the date the judgment is paid in full. 28 U.S.C. § 1961(a). Post-judgment interest accrues at the federal statutory rate until the judgment is paid. Id; see also Joe Hand Prods., Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *14 (E.D.N.Y. May 29, 2013); J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at * 5 (E.D.N.Y. Nov. 7, 2011).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment be granted with respect to defendant Heat Caribbean Kitchen & Lounge and

that plaintiff be awarded $2,500 in statutory damages and $7,500 in enhanced damages, for a total of $10,000, plus post-judgment interest at the federal statutory rate until the judgment is paid in full.  Additionally, I recommend that plaintiff be permitted to file a separate motion for attorney's fees and costs within thirty days from the date this judgment becomes final.

Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Brodie and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).  Plaintiff is directed to serve copies of this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service with the Clerk of the Court within ten days of the date of this Report and Recommendation.

Respectfully submitted,

_/s/_____
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
          December 13, 2021